[No. B074791. Second Dist., Div. Four. Sept. 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WALLACE ARTHUR BILLS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts V to XI.

**COUNSEL**

Mark L. Christiansen and Handy Horiye, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Linda C. Johnson and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), J.—**

I

INTRODUCTION

A jury convicted appellants Wallace Arthur Bills and Maurice Frederick Alston of first degree murder, robbery, and burglary, with the special circumstances that the murder was committed in the course of robbery and burglary, and with enhancements that each personally inflicted great bodily injury and that Alston personally used a knife. The prosecution sought the death penalty, but the jury fixed the penalty at life imprisonment without possibility of parole.

II

FACTS

The victim, Irene Davis, was the elderly cousin of Alston's grandmother. From previous visits to her home, Alston knew the victim kept large amounts of cash in a valise in her bedroom. Alston's friend Bills needed $700. Alston, Bills, and an uncharged third party, Mora, drove from El Paso, Texas, to the victim's house in Los Angeles in order to steal money from her.

They arrived in the evening of September 28, 1986, and circled the block several times. Alston and Bills got out and were admitted to the residence by the victim, who normally stayed home alone behind double-locked security doors. Mora continued circling the block in the car. This circling, both before and after appellants entered the residence, drew the attention of neighbors, who alerted the police to a possible burglary of the victim's residence. Los Angeles Police Sergeant Koon responded to the call, and through a window on the front porch observed some of appellants' activities inside.

Sergeant Koon observed both appellants carrying from the bedroom to the kitchen what Koon then believed was a rolled-up oriental carpet; Koon

observed Bills kneeling by the object, engaged in some kind of tugging motion. Koon observed both appellants running frantically back and forth between the bedroom and service porch. Appellants ran from the rear of the residence into the backyard. Officers in a police helicopter above the residence observed with night lights as appellants fled the residence and were captured at the scene. Bills threw a knife on the ground. Alston threw a valise on the roof. The knife was bloody, and was later found to have Alston's thumbprint. There were blood spatters on the shoes of both appellants. The valise contained papers with the victim's name and $14,955 cash.

Entering the residence, police found the victim lying on the kitchen floor in a pool of blood, her throat slashed from ear to ear. She also had stab wounds in the chin and eye. In addition, she was strangled and her face had been subjected to blunt force trauma. She was dead from the combined effects of these injuries. In the coroner's opinion she was strangled and beaten before her throat was slashed. A kitchen drawer containing knives was partially open. There were blood spatters and signs of a struggle in the kitchen but not in the bedroom.

Alston, who vacillated during trial whether he would take the stand, ultimately testified in his defense, admitting that he and Bills planned to enter the residence for the purpose of stealing the victim's money, but blaming Bills for the actual killing. According to Alston's testimony, Alston left Bills and the victim in the kitchen while Alston excused himself, ostensibly to use the bathroom but actually to sneak into the bedroom and steal money from the valise. He had located the valise and then heard a noise in the kitchen. Returning to the kitchen he found Bills over the victim's body, shoving her head onto the floor. When Alston grabbed Bills and yelled, "What the fuck is you doing?" Bills struck Alston in the mouth and said, " 'Don't trip out now. It's too late for that.' " Alston ran to other portions of the house looking for keys to let themselves out of the double-locked doors. When he returned to the kitchen he saw the victim in a pool of blood and Bills holding a knife. Alston's version failed to account for his thumbprint on the knife or for Sergeant Koon's observation of both appellants carrying the body from the bedroom to the kitchen.

Bills, although offered an opportunity or continuance to meet Alston's damaging testimony, did not do so. Prior to Alston's testimony, Bills presented two character witnesses concerning Bills's reputation for nonviolence.

III

CONTENTIONS

Both appellants contend: (1) the loss of the reporter's notes of certain sealed proceedings requires that a new trial be granted, (2) the court erroneously instructed the jury on the special circumstances requirement of intent to kill, and (3) the court inadequately instructed the jury on the underlying felonies for special circumstances felony murder.

Bills separately contends: (1) the court erroneously refused to instruct on other forms of murder than felony murder, (2) the court erred in denying Bills's motions for separate juries on the ground of conflicting defenses, and for mistrial after Alston testified, and (3) the court failed to state a reason for consecutive sentences for robbery and burglary.

Alston separately contends: (1) the court erroneously refused to instruct on grand theft as a lesser offense of robbery, and (2) the court erroneously permitted the prosecution to amend the information to allege that Alston personally used a knife and personally inflicted great bodily injury.

Finding no merit to these contentions, we affirm both judgments.

IV

MISSING TRANSCRIPTS

During the course of this lengthy trial, several confidential hearings were held on ex parte matters. In accordance with the trial court's practice at the time, the reporter's notes of these hearings were sealed and placed in the superior court file. Sometime after trial the superior court file was lost. Consequently, there are no reporter's transcripts on appeal for these confidential hearings. Pursuant to our order, the executive officer of the superior court conducted a lengthy search for the missing file, without success. Also pursuant to our order, the trial judge and all trial counsel met and attempted to settle a statement of facts concerning what occurred during the confidential hearings. The hearing on settling a statement was held November 17, 1994, more than five years after the trial which concluded June 2, 1989. The judge and counsel had little recollection of what occurred at these hearings. From their limited recollection set forth in the settled statement, and from the surrounding context of remarks made on the record of the trial transcript, which is not missing, we know that these hearings involved (1) two motions by Bills under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465

P.2d 44] to relieve his appointed counsel, which the trial court denied, (2) ex parte requests by counsel for Alston for appointment of a lie detector expert, (3) a continuing ex parte dialogue between counsel and the court concerning the defenses to be presented by appellants, (4) requests by the court to meet ex parte with counsel for which no reason was expressly indicated on the record, and (5) ex parte hearings during the penalty phase which appellants concede caused no prejudice in light of the favorable penalty verdict.

■ Both appellants contend that the fact these transcripts are missing and their content could not be settled by the court and counsel compels reversal and a new trial. We disagree.

■ The loss, destruction, or absence of a portion of the reporter's notes does not *per se* require a new trial. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1333, fn. 70 [18 Cal.Rptr.2d 796, 850 P.2d 1] [failure to report chambers conferences between court and counsel].) The burden is on the appellant to show that the omissions are "substantial" and "consequential" (*People* v. *Chessman* (1950) 35 Cal.2d 455, 462 [218 P.2d 769, 19 A.L.R.2d 1084]; *People* v. *Howard* (1992) 1 Cal.4th 1132, 1165 [5 Cal.Rptr.2d 268, 824 P.2d 1315]; *People* v. *Pinholster* (1992) 1 Cal.4th 865, 921 [4 Cal.Rptr.2d 765, 824 P.2d 571]), and that the omissions prevent meaningful appellate review. (*People* v. *Pinholster*, *supra*, 1 Cal.4th at p. 921.) The burden is on the appellant to show prejudicial error. (*Id.* at pp. 922-923 & fn. 8; *People* v. *Roberts* (1992) 2 Cal.4th 271, 326, 339, fn. 19, 340, fn. 20 [6 Cal.Rptr.2d 276, 826 P.2d 274].) The cases which have reversed convictions because records were lost involved very substantial omissions, such as *all* (*People* v. *Jones* (1981) 125 Cal.App.3d 298 [178 Cal.Rptr. 44]; *People* v. *Serrato* (1965) 238 Cal.App.2d 112 [47 Cal.Rptr. 543]) or a large portion (*In re Steven B.* (1979) 25 Cal.3d 1 [157 Cal.Rptr. 510, 598 P.2d 480]) or a crucial portion (*People* v. *Apalatequi* (1978) 82 Cal.App.3d 970 [147 Cal.Rptr. 473]) of the reporter's notes, or a crucial item of evidence. (*In re Roderick S.* (1981) 125 Cal.App.3d 48 [177 Cal.Rptr. 800].) ■ This is clearly not such a case: the reporter's transcript of the actual trial is complete, with over 6,000 pages; only the record of certain ex parte hearings is missing. (*See People* v. *Pinholster*, *supra*, 1 Cal.4th at p. 921; *People* v. *Moore* (1988) 201 Cal.App.3d 51, 57 [248 Cal.Rptr. 31].)

Concerning the hearings in which Alston's counsel sought a lie detector expert, this was a routine, inconsequential matter. Furthermore, no prejudicial omission is involved, because during the proceedings for settling a statement Alston's counsel recalled that the expert was appointed and that in a subsequent hearing on the record the lie detector evidence was ruled inadmissible.

Concerning ex parte hearings wherein Alston's counsel disclosed Alston's proposed defense, there is no prejudicial omission, because Alston subsequently testified to his defense, thus filling in the record. (*See People* v. *Howard, supra,* 1 Cal.4th at pp. 1165-1166; *People* v. *Pinholster, supra,* 1 Cal.4th at p. 922.)

Both appellants suggest that the ex parte hearings in which counsel for Bills and Alston separately disclosed to the judge their proposed defenses may be material to their motions requesting separate trials or separate juries on the ground of antagonistic defenses. As discussed *post* in connection with Bills's appeal, the motions had no support under the law, and we do not find our review to be hampered by the absence of those transcripts. (*See People* v. *Morales* (1979) 88 Cal.App.3d 259, 267 [151 Cal.Rptr. 610].)

Finally, Bills argues that the absence of the sealed transcripts of his motions to relieve his trial counsel pursuant to *People* v. *Marsden, supra,* 2 Cal.3d 118, is a substantial and prejudicial omission requiring that a new trial be granted. We reject Bills's contention under the circumstances of this case.

By way of factual background, we do know some of the circumstances surrounding those motions, because of statements by Bills's counsel on the record. Both hearings occurred before the trial began. On October 3, 1988, Bills's counsel, Mr. Latiner, informed the court that Bills wished to have Latiner relieved, and suggested the court hold a *Marsden* hearing. The in camera hearing attended only by Bills, Latiner, and the court was conducted and was reported in the sealed and now missing pages 90-122 of the transcript. Back in open court, the court announced the motion was denied. Latiner then also informed the court that Bills had an idea he could hire private counsel, which Latiner gravely doubted because of the expense involved. On October 13, 1988, Latiner informed the court that "although last Friday my client and I had a very amicable conversation . . . in fact, he apologized to me for things he said and positions he took previously, [but] just before the court resumed this afternoon . . . it seems that again, Mr. Bills, angry with the message, is becoming angry with the messenger and, again, he has taken a position he does not want me as his lawyer. . . . [F]or instance, he insists he will not wear any clothing other than his jail blues even if I were to obtain his clothing. He does not want his mother here or doesn't want any of the witnesses I plan to call brought out. Above all, he doesn't want me. I don't think anything is going to be said of a confidential nature at this juncture, so Mr. Bills can address the court if he wishes. [¶] THE COURT: You want to address the court? [¶] THE DEFENDANT: Just don't want him as an attorney." At this point the prosecutor, out of an abundance

of caution, suggested the court conduct an in camera *Marsden* hearing, which the court did. The sealed transcript of that hearing, now missing, occupied pages 207-218 of the transcript. Back on the record, the bailiff announced that Bills refused to come back into the courtroom. That became moot because the court adjourned for the day. The court denied the *Marsden* motion.

 A *Marsden* motion is addressed to the discretion of the trial court, and a defendant bears a very heavy burden to prevail on such a motion. The defendant must show that appointed counsel is not adequately representing him, and that the deficiency in representation is so great as to substantially impair the defendant's right to the effective assistance of counsel. (*People* v. *Webster* (1991) 54 Cal.3d 411, 435-436 [285 Cal.Rptr. 31, 814 P.2d 1273].) The defendant must give specific examples of counsel's inadequacies, and cannot rest upon mere failure to get along with or have confidence in counsel. (*Id.* at p. 435; *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1070 [25 Cal.Rptr.2d 867, 864 P.2d 40].) Here, some of Bills's complaints were placed on the record, and these did not indicate good grounds for relieving counsel. Given one opportunity to make a record in open court before the second *Marsden* hearing, Bills offered nothing specific.

These motions occurred before the trial commenced. There is nothing in the record of the trial, which is not missing, indicating that Bills's counsel actually rendered ineffective assistance of counsel. In this situation we find *People* v. *Moore*, *supra*, 201 Cal.App.3d 51, 57, instructive. There the reporter's notes of defense counsel's argument to the jury were lost. The appellate court rejected the argument that this required reversal. In concluding that the appellants had not shown that the omission was substantial or prejudicial, the court considered the record of the trial. It stated, "The missing transcript herein represents a small proportion of over 4,000 pages of trial record. This record gives no indication that defendants received anything less than a vigorous, aggressive and extremely competent defense by experienced and well prepared attorneys. It is improbable that after rendering such exemplary assistance throughout this lengthy trial, all three defense counsel would suddenly [render ineffective assistance during argument]." (*Ibid.*) The court also considered that the record of the proceedings subsequent to the missing portion gave no indication that the conduct of defense counsel during the missing portion had been ineffective. (*Id.* at pp. 57-58.) In *People* v. *Roberts*, *supra*, 2 Cal.4th at pages 339, footnote 19, and 340, footnote 20, the Supreme Court also considered the whole record and the *improbability* that prejudicial error occurred during the proceedings omitted from the transcript.

Applying this reasoning here, nothing in the record subsequent to the missing hearings indicates counsel rendered ineffective assistance. Portions

of Bills's complaints about counsel were on the record, and indicated no cause for relieving counsel under *Marsden.* During the proceedings to settle a statement, the trial court commented that it remembered no details of the *Marsden* hearings in part because, "[t]o me this case went smoothly compared to other cases. This case went very smooth, ran very well. So, I don't remember any problems." Given (1) the extreme burden for a defendant to prevail on a *Marsden* motion, (2) what we do know from the record concerning the motions, (3) the effective assistance of counsel given during the trial following the pretrial motions, and (4) the trial court's failure to remember that Bills raised any significant issue during the in camera proceedings, we conclude Bills has not borne his burden of demonstrating that the omission was substantial or of showing any probability that a more favorable outcome would result had the records not been lost. (*People* v. *Roberts, supra,* 2 Cal.4th at pp. 339, fn. 19 & 340, fn. 20; *People* v. *Moore, supra,* 201 Cal.App.3d at p. 57.)

■ A *Marsden* motion is a defendant's procedural vehicle for bringing to the trial court's attention a claim of ineffective assistance of counsel. (5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2789, p. 3382.) The general rule concerning appellate claims of ineffective assistance is that often the alleged deficiency of counsel is not shown by the record on appeal; such cases do not lead to reversal of the judgment on appeal; rather the defendant is relegated to the remedy of habeas corpus, wherein the defendant can bring forth evidence outside the record on appeal. (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) If a judgment will not be reversed on appeal where the record on appeal, by its very nature, fails to show counsel was incompetent, it likewise should not be reversed on appeal simply because the record omits the *Marsden* proceeding challenging counsel's competence. ■ If Bills has any claim, it should be by habeas corpus, in which he submits a declaration of his recollection of the *Marsden* hearings. (E.g., *People* v. *Morales, supra,* 88 Cal.App.3d 259, 266 [habeas corpus declaration used to indicate what occurred during portions of proceedings missing in transcript].)

We conclude under all the circumstances that neither Bills nor Alston has shown the loss of the reporter's notes of the sealed proceedings involves a substantial, consequential omission, or prejudicial error, or prevents meaningful appellate review, so as to require reversal and a new trial regardless whether the record otherwise shows error.

V-XI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 953.

## XII

### Disposition

The judgments are affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied October 20, 1995, and appellants' petition for review by the Supreme Court was denied January 4, 1996.