Filed 12/1/15  P. v. Lawrence CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RORY ROBERT LAWRENCE,<br><br>Defendant and Appellant. | F068631<br><br>(Super. Ct. No. BF148218A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]      Before Levy, Acting P.J., Peña, J. and Smith, J.

-ooOoo-

Defendant Rory Robert Lawrence was convicted by no contest plea of felony domestic violence against his wife. On appeal, he contends the trial court erred in denying his *Marsden*[1] motion for substitute appointed counsel. We affirm.

## BACKGROUND

On May 1, 2013, defendant was charged with corporal injury to a spouse (Pen. Code, § 273.5, subd. (a)),[2] with an allegation that he had suffered a prior conviction within the meaning of section 273.5, subdivision (e). He pled not guilty.[3]

On May 14, 2013, defendant rejected a plea offer of four years.[4]

On May 15, 2013, at the preliminary hearing, defendant pled no contest and admitted a prior conviction within the meaning of section 273.5, subdivision (e) and a prior felony conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), over the prosecutor's objection. The trial court indicated sentence would be no more than one year as a term of felony probation, with the granting of a *Romero*[5] motion to strike the prior felony conviction.[6]

On May 22, 2013, defendant filed a *Romero* motion.[7]

On June 13, 2013, after considering the probation report and the victim's statement, the trial court denied the *Romero* motion and allowed defendant to withdraw his plea.[8]

---

[1]   *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2]   All statutory references are to the Penal Code.

[3]   Defendant appeared with Public Defender Lolachi.

[4]   Defendant appeared with Public Defender Ratliff.

[5]   *People v. Superior Court (Romero)* 13 Cal.4th 497 (*Romero*).

[6]   Defendant appeared with Public Defender Ratliff.

[7]   Defendant appeared with Public Defender Ratliff.

[8]   Defendant appeared with Public Defender Ratliff.

2.

On June 24, 2013, defendant appeared without counsel and the court appointed another public defender. Defendant pled not guilty.[9]

On August 2, 2013, defendant appeared at the readiness hearing with a fourth public defender, Ms. Keshishian. Ms. Keshishian represented defendant for the remainder of the proceedings.

On August 6, 2013, defendant appeared with Ms. Keshishian for a *Marsden* hearing. The trial court asked defendant to explain why Ms. Keshishian should be fired. The following occurred:

> "THE DEFENDANT: I asked for motions to be filed on motions date, motions were vacated. Motions are essential for appeals and writs, and even of objection, when I accepted the plea of one year on a plea bargain and it was rejected, counsel did not object to the ruling the judge made; probation was granted, and there was no new evidence. She didn't object, didn't want to file no motions. And third, she has not got evidence that's crucial to my case so far, that would make the case a lot different.
>
> "THE COURT: What evidence do you believe is out there that she's failed to gather?
>
> "THE DEFENDANT: From Kern Mental Health, the Veteran's Association and witnesses that, proof in my defense, that would prove me innocent.
>
> "THE COURT: Okay. Ms. Keshishian, would you like to respond to the comments that have been made so far?
>
> "MS. KESHISHIAN: Sure, your Honor. With regards to the police reports, I do not have independent recollection of providing [defendant] with any reports. I thought I did, but I do not know that for a fact. I have not, but I went over the police reports with him.
>
> "He also asked for a copy of the transcripts and also the 911 call. I went over those with him, but I have not provided copies to him.
>
> "With regards to the motions, [defendant], I know we talk[ed] several times about this, he wanted a 995 motion and Romero. I indicated

---

[9]     Defendant appeared with Public Defender Kinnison.

3.

that there were, I couldn't file a 995 motion because there was sufficient evidence presented at the time of the preliminary hearing, and Romero is a sentencing issue.

"With regards to evidence, I have interviewed every witness that he has provided me with, I have interviewed the victim in this case, I have interviewed a person who called 911, I have photos taken from the location where the individual contacted 911 and saw the incident. That's it.

"THE COURT: Did you have any other comment, [defendant]?

"THE DEFENDANT: Yes, she has not interviewed or investigated crucial evidence from witnesses, especially my workers at Mary K. Shell and my case manager, witnesses that have shown that—and my daughter that works with the mental health system, my uncle, that has seen I was being abused. I am a physically and mentally disabled American veteran, I was being abused. She knows this and she didn't check evidence to prove this, to show the court what was going on.

"There's a lot of stuff that was going on in my case and it's not in there and she is not being truthful about that and we don't click. She wants to go against everything I say and question it, which I told her from the beginning, I'm going to tell you the truth, everything that's been taking place, what's been happening in my life. And it wasn't tooken [*sic*] into consideration.

"THE COURT: Ms. Keshishian, were you made aware there might be mental health issues involved in this case?

"MS. KESHISHIAN: I do, and I do have the records.

"THE COURT: You have been subpoen[a]ing records on that?

"MS. KESHISHIAN: I do.

"THE COURT: Thank you, I think I've heard enough. I don't think there's good cause to fire Ms. Keshishian as the attorney, so the Marsden motion is denied.

"THE DEFENDANT: Can I object? *I have a right to appeal*?

"THE COURT: *You can appeal anything.* I will tell [the prosecutor] that the matter remains as previously scheduled.…" (Italics added.)

4.

At this point, Ms. Keshishian stated she had a doubt as to defendant's mental competence pursuant to section 1368, noting she had raised the issue at the previous hearing. Defendant disputed the claim. The court suspended criminal proceedings and appointed physicians to examine defendant.

On September 19, 2013, the trial court stated that two of three physicians found defendant competent to stand trial. The court also made this finding and reinstated criminal proceedings.[10]

On October 9, 2013, Ms. Keshishian subpoenaed six witnesses.

On November 1, 2013, defendant pled no contest and admitted the prior felony conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The court indicated a sentence of two years with the granting of a *Romero* motion.

On December 4, 2013, after considering the probation report and the victim's statement, the trial court granted the *Romero* motion and sentenced defendant to two years in prison.

On December 23, 2013, the trial court granted defendant's request for a certificate of probable cause on the following grounds:

> "Abuse of the judicial process[.] Original judge violated my due process rights and denial of my Marsden Motion and pressured into pleading. My constitutional rights were violated."

## **DISCUSSION**

Defendant argues that his claim is appealable despite his no contest plea because the court's statement, "You can appeal anything," amounted to a promise that he would have the right to appeal the denial of his *Marsden* motion. He asserts that he relied on the court's statement. The People counter that defendant forfeited this claim by entering into a no contest plea three months after the court denied his *Marsden* motion. (*People v.*

---

[10] Public Defender Cruz appeared for Ms. Keshishian at this hearing.

*Lobaugh* (1987) 188 Cal.App.3d 780, 786; *People v. Lovings* (2004) 118 Cal.App.4th 1305, 1310-1311.) Alternatively, the People argue that the contention is without merit. We conclude that, even assuming defendant's claim was preserved for appeal by the trial court's statement, the claim has no merit.

Defendant contends that he and Ms. Keshishian "had become embroiled in such an irreconcilable conflict that ineffective representation was likely to result." He asserts that the trial court's refusal to appoint substitute counsel was reversible error. He explains that the issue involved Ms. Keshishian's "interviewing witnesses related to his own physical history," And that his argument before the trial court was "not that [Ms. Keshishian] had done nothing, but rather that she had failed to consult with the persons who would know about past physical abuse against him. Presumably, [defendant's] argument was that these people could support a claim of self-defense."

"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." (*People v. Crandell* (1988) 46 Cal.3d 833, 854, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) "'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation."'" (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) "A *Marsden* motion is addressed to the discretion of the trial court, and a defendant bears a very heavy burden to prevail on such a motion. The defendant must show that appointed counsel is not adequately representing him, and that the deficiency in representation is so great as to substantially impair the defendant's right to

the effective assistance of counsel. [Citation.] The defendant must give specific examples of counsel's inadequacies, and cannot rest upon mere failure to get along with or have confidence in counsel." (*People v. Bills* (1995) 38 Cal.App.4th 953, 961.) A defendant who does not make this showing is not entitled to substitute counsel. (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

We conclude that the trial court did not abuse its discretion when it denied defendant's *Marsden* motion. When the court allowed defendant to present his concerns, he claimed (among other things he does not raise here) that Ms. Keshishian failed to investigate witnesses who could prove he had been abused and failed to investigate the things that were happening in his life. He did not, however, explain how this information would affect his case. Ms. Keshishian responded that she had in fact interviewed every witness named by defendant and that she did possess his mental health records and was aware the case might involve mental health issues. In light of the explanations offered by Ms. Keshishian, the reasons stated by defendant at the *Marsden* hearing did not show any inadequacy of counsel or irreconcilable differences. The court was entitled to make a credibility determination and accept Ms. Keshishian's explanations that she had interviewed witnesses and investigated defendant's mental health issues.[11] (*People v. Smith, supra,* 6 Cal.4th at p. 696.)

In sum, defendant did not make "'"'a substantial showing that failure to order substitution [was] likely to result in constitutionally inadequate representation.'"'" (*People v. Streeter, supra,* 54 Cal.4th at p. 230.) The trial court did not abuse its discretion in denying defendant's motion for substitute counsel.

---

**11** Some of defendant's complaints, such as those regarding his previously withdrawn no contest plea involved a previous attorney, not Ms. Keshishian.

We note that Ms. Keshishian's consideration of defendant's mental health issues was confirmed by her statement of doubt regarding his competence to stand trial, which defendant disputed.

## DISPOSITION

The judgment is affirmed.