Filed 8/25/20  P. v. Bills CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B301800 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A790003) |
| v. | |
| WALLACE ARTHUR BILLS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Dismissed.

Marta I. Santon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Appellant Wallace Arthur Bills was convicted of special circumstance murder, burglary, and robbery in 1989. In 2019, he petitioned the trial court for resentencing under Penal Code section 1170.95.[1] After issuing an order to show cause and appointing counsel for appellant, the trial court denied his petition, finding that appellant was not eligible for resentencing under section 1170.95. Appellant appealed. Citing *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), his appointed counsel filed an opening brief requesting that this court independently review the entire record on appeal for arguable issues. Following *People v. Cole* (2020) ___ Cal.Rptr.3d___, ___ Cal.App.5th ___ 2020 WL 4435275 (*Cole*), we conclude we are not obligated to do so and dismiss the appeal as abandoned.

## BACKGROUND

### I. Underlying Convictions

Appellant was charged with special circumstance murder (§§ 187, subd. (a), 190.2, subd. (a)(17), count one),[2] residential burglary (§ 459, count two), and robbery (§ 211, count three). It was further alleged that appellant personally used a knife during the commission of each count (§ 12022, subd. (b)) and personally inflicted great bodily injury on victim Irene Katherine Davis during the commission of counts two and three (§ 12022.7).

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]The special circumstance alleged was that "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, . . . [r]obbery in violation of Section 211 or 212.5." (§ 190.2, subd. (a)(17)(A).)

2

Appellant and a codefendant, Maurice Alston, also known as Tyrone Jarrad Williams, proceeded to jury trial.

According to our previous decision in this case, *People v. Bills* (1995) 38 Cal.App.4th 953 (*Bills)*, which is part of the record on appeal, the following relevant facts were adduced at the joint trial.

Appellant told Alston that he needed $700. (*Bills*, *supra*, 38 Cal.App.4th at p. 956.) Alston knew that victim Davis, an elderly cousin of his grandmother, kept large sums of cash in a valise or suitcase in her bedroom. (*Ibid.*) Appellant, Alston, and a third uncharged party drove from El Paso, Texas, to Davis's home in Los Angeles to steal money from her. (*Ibid.*)

Davis let appellant and Alston into her home. (*Bills*, *supra*, 38 Cal.App.4th at p. 956.) Both prior to appellant and Alston's entry and while they were inside, the uncharged party drove the getaway car around the block multiple times. (*Ibid.*) The circling drew the attention of neighbors, who called police. (*Ibid.*) When the police arrived, they saw appellant and Alston carrying from the bedroom to the kitchen what officers believed to be a rolled up carpet. Appellant and Alston then exited the home and ran into the backyard. Officers observed appellant throw a knife on the ground and Alston throw a suitcase on the roof before apprehending both of them. Appellant's and Alston's shoes and the knife were bloody, the knife had Alston's thumbprint on it, and the suitcase was found to contain papers bearing Davis's name and nearly $15,000 in cash. (*Id.* at p. 957.)

Police found Davis lying dead on her kitchen floor in a pool of blood; her throat was "slashed from ear to ear," and she "had stab wounds in the chin and eye." (*Ibid.*) Davis had also been strangled and subjected to blunt force trauma; the coroner opined

3

these injuries occurred before her throat was slashed, and attributed her death to "the combined effect" of her injuries. (*Ibid.*) There were blood spatters and signs of a struggle in the kitchen but not the bedroom, and a kitchen drawer containing knives was partially open. (*Ibid.*)

Alston testified at trial, "admitting that he and Bills planned to enter the residence for the purpose of stealing the victim's money, but blaming Bills for the actual killing." (*Bills, supra*, 38 Cal.App.4th at p. 957.) "According to Alston's testimony, Alston left Bills and the victim in the kitchen while Alston excused himself, ostensibly to use the bathroom but actually to sneak into the bedroom and steal money from the valise. He had located the valise and then heard a noise in the kitchen. Returning to the kitchen he found Bills over the victim's body, shoving her head onto the floor. When Alston grabbed Bills and yelled, 'What the fuck is you doing?,' Bills struck Alston in the mouth and said, "'Don't trip out now. It's too late for that."' Alston ran to other portions of the house looking for keys to let [Bills and himself] out of the double-locked doors. When he returned to the kitchen he saw the victim in a pool of blood and Bills holding a knife." (*Ibid.*) We noted that Alston's testimony "failed to account for his thumbprint on the knife or for Sergeant Koon's observation of both appellant[ and Alston] carrying the body from the bedroom to the kitchen." (*Ibid.*) Appellant did not present evidence to refute Alston's testimony, although he did present two character witnesses who testified to his reputation for nonviolence. (*Ibid.*)

The jury convicted appellant and Alston "of first degree murder, robbery, and burglary, with the special circumstances that the murder was committed in the course of robbery and

4

burglary, and with enhancements that each inflicted great bodily injury and that Alston personally used a knife." (*Bills*, *supra*, 38 Cal.App.4th at p. 956.) Appellant and Alston were sentenced to life without the possibility of parole. (*Ibid.*) We affirmed their convictions. (*Id.* at p. 963.)

## II.    Section 1170.95 Proceedings

On March 4, 2019, appellant, in propria persona, filed a petition for resentencing under section 1170.95. That statute, which became effective January 1, 2019, allows a "person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition . . . to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" under certain conditions. (§ 1170.95, subd. (a).) Appellant checked all but one box on the form petition, including those stating, "I was not the actual killer" and "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer of the commission of murder in the first degree." He also requested the appointment of counsel. (See § 1170.95, subd. (b)(1)(C).)

On May 22, 2019, the trial court issued an order to show cause appointing counsel for appellant and setting the matter for a hearing. (§ 1170.95, subd. (c).) The trial court explained that it had "tried to obtain additional information in order to appropriately rule on the petition," but had been unable to do so. It further noted, "it appears [appellant] was convicted by jury and that the [*sic*] he was charged with personal use of a weapon. However, without more, the court must assume [appellant's] factual allegations are true . . . ." At the prosecution's request, and without objection from appellant, the trial court extended the

5

prosecution's time to file its opposition and set the matter for hearing on September 23, 2019.

On September 19, 2019, the prosecution filed an opposition to appellant's petition. It argued that section 1170.95 was unconstitutional, and that appellant was not eligible for relief in any event because, based on the facts and jury findings stated in our previous opinion, appellant either "1) was the actual killer, 2) had the specific intent to kill, or 3) was a 'major participant' who acted 'with reckless indifference to human life.'" (See §§ 1170.95, subd. (a)(3), 189, subd. (e).)

On September 23, 2019, the trial court summarily denied the petition. It found that the evidence at appellant's trial, "which the jury clearly believed given the verdicts, is sufficient evidence that [appellant] was the actual killer" and therefore rendered him ineligible for relief under section 1170.95 as a matter of law. The court "acknowledge[d] that felony murder jury instructions were given," but concluded from its review of "the information filed by [appellant], a summary of the facts provided by the People and confirmed by the Court of Appeal Opinion and the other documents available to the court" that appellant was the actual killer.

Appellant timely appealed. His appointed counsel filed a brief requesting that we independently review the record for error. (*Wende*, *supra*, 25 Cal.3d at p. 441.) We directed counsel to send the record and a copy of the brief to appellant, and notified appellant of his right to file a supplemental brief within 30 days. Appellant has not timely filed a supplemental brief.

## DISCUSSION

Whether the process contemplated by *Wende* and *Anders v. California* (1967) 386 U.S. 738 applies to an appeal from an order

6

denying a petition for resentencing under section 1170.95 has been an open question.  Recently, our colleagues in Division Two of the Second District Court of Appeal "reject[ed] the notion that the Constitution compels the adoption or extension of *Wende* procedures (or any subset of them) for appeals other than a criminal defendant's first appeal of right."  (*Cole*, *supra*, at 2020 WL 4435275, at p. *5.)  After engaging in a persuasive analysis of review procedures that have been applied in various contexts, the court prescribed procedures to be followed "when counsel is appointed to represent a defendant who is appealing the denial of postconviction relief."  (*Id.* at p. *7.)  We agree with and adopt the analysis and procedures set forth in *Cole*, which we summarize here.

"First, counsel must independently review the 'entire record' and 'thoroughly research the law.'  [Citations.]"  (*Cole*, *supra*, at p. *7.)  Counsel must then assess whether there are any reasonably arguable issues to present on appeal.  (*Ibid.*)  If there are, counsel must file a brief setting forth those issues.  If there are not, "counsel must file a brief with the Court of Appeal setting forth (1) a brief statement of the pertinent procedural history of the case, (2) a brief summary of the pertinent facts, (3) counsel's declaration that there are no reasonably arguable issues to present on appeal, and (4) counsel's affirmation that he or she remains ready to brief any issues at the request of the Court of Appeal."  (*Ibid.*)  Like the court in *Cole*, "[w]e will not require counsel to set forth the 'applicable law' in the brief because (1) the cases requiring counsel to do so in first appeals of right do not uniformly require counsel to do so . . . and (2) the purpose of requiring counsel to set forth the 'applicable law'— that is, to aid the Court of Appeal in its independent review of the

7

record [citations]—is irrelevant where, as here, a court has no duty to conduct such a review."  Finally, counsel must provide the client with a copy of the brief and inform the client that he or she has the right to file a supplemental brief with the Court of Appeal within 30 days.  (*Id.* at p. *8.)  We will also notify the appellant of his or her right to file a supplemental brief.  (*Ibid.*)

We agree with *Cole*, for the reasons set forth in that opinion, that the "Court of Appeal has no independent duty to review the record for reasonably arguable issues" in an appeal that is not a first appeal of right.  (*Cole, supra,* at p. *8.)  If the appellant timely files a supplemental brief, however, we are obliged "to evaluate any arguments presented in that brief and to issue a written opin ion that disposes of the trial court's order on the merits."  (*Ibid.*)  If the appellant does not timely file a supplemental brief, we may dismiss the appeal as abandoned, "because the order appealed from is presumed to be correct," and, "in the absence of any arguments to the contrary," we must conclude that the appellant "has not carried his or her burden of proving otherwise."  (*Ibid.*)  When we dismiss an appeal as abandoned, we "need not write an opinion because '[n]othing is served by requiring a written opinion when the court does not actually decide any contested issues.'  [Citation.]"  (*Ibid.*)

Applying the foregoing procedures, we conclude that appellate counsel has complied with her obligations.  Both she and this court advised appellant that he had a right to file a supplemental brief.  Because he did not do so, we dismiss this appeal as abandoned in accordance with the procedures articulated in *Cole, supra,* and summarized above.

8

## DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


MANELLA, P. J.


CURREY, J.