Filed 5/8/26  P. v. Hagerman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AARON RANDALL HAGERMAN, <br><br> Defendant and Appellant. | F088289 <br><br> (Super. Ct. Nos. CRF58594 & CRF71731) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Maureen M. Bodo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Anna J. Benham, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Aaron Randall Hagerman (appellant) of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count 1),[1] kidnapping (§ 207, subd. (a); count 2), and kidnapping during the commission of a carjacking (§ 209.5, subd. (a); count 5). The trial court sentenced appellant to seven years to life in state prison plus a consecutive determinate term of 11 years.[2]

On appeal, appellant contends the trial court erred in denying his two motions to replace appointed defense counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. We conclude denial of the motions was not an abuse of discretion. We affirm.

## BACKGROUND

Because appellant's sole claim on appeal challenges the denial of his *Marsden* motions, we need not recount the evidence of the charged offenses in detail. (See *People v. White* (1997) 55 Cal.App.4th 914, 916, fn. 2.) In brief, on December 22, 2022, Alyssa Hoyopatubbi directed the victim to drive her to a trailer, claiming she resided there and needed to pick up some belongings. After they entered the trailer, the victim was accosted by appellant and another individual, Jeffrey Moore. The men tied the victim up, beat him, demanded money and drugs, and took his phone, clothes, and about $200 from his person. Later, they dragged the victim to his car, put him facedown in the backseat, and drove around for about 45 minutes. When the car stopped, the men pulled the victim out, placed him in a hole in the ground, threatened to kill him if he reported the incident to the police, and instructed him to wait five minutes before emerging. After the men left, the victim climbed out of the hole and flagged down a passing ambulance for assistance.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Appellant's total sentence included a consecutive determinate term of three years for a violation of probation in a separate matter.

Law enforcement processed the victim's car for fingerprints. Two prints recovered from the exterior rear driver's-side window matched appellant.

During a law enforcement interview, appellant admitted his involvement in the robbery and kidnapping. He stated that Hoyopatubbi proposed that she, appellant, and Moore rob the victim because he had recently won a substantial sum of money at a casino. According to appellant, the plan was to lure the victim to a trailer, rob him, and divide the proceeds among the three participants.

## DISCUSSION

### I. The Denial of Appellant's Marsden Motions Was Not an Abuse of Discretion.

Several weeks before trial, and again during trial, appellant brought *Marsden* motions seeking to replace his appointed defense counsel. At the ensuing hearings, appellant raised multiple complaints, including that counsel expressed the opinion appellant was unlikely to prevail at trial, failed to adequately communicate with him, did not contact proposed alibi witnesses, and that appellant had lost confidence in counsel. The trial court denied the motions, concluding in each instance that appellant failed to make the requisite showing for substitution of counsel. Appellant contends this was an abuse of discretion requiring reversal of his convictions.

#### A. *Background.*

#### 1. Pretrial Marsden hearing.

Appellant was arraigned on the information on November 21, 2023. He entered a plea of not guilty, declined to waive time for trial, and the matter was set for trial on January 2, 2024. Appellant also rejected the People's offer of 21 years in state prison, and the offer was thereafter withdrawn.

At a trial readiness hearing on December 26, 2023, defense counsel appeared remotely because he had tested positive for COVID. During the hearing, the prosecutor stated that defense counsel had verbally informed the People that he might call

appellant's mother as a witness, but they had "reason to believe" the defense may have additional alibi witnesses. The prosecutor further stated that because the defense had not provided reciprocal discovery as required by section 1054.3, they would be moving to exclude those witnesses at trial. Defense counsel responded that he was not obligated to provide discovery because he had not decided whether he would call appellant's mother at trial, and that he was unaware of the other potential alibi witnesses the prosecutor was referring to. The court expressed skepticism as to defense counsel's position regarding discovery but did not address the issue further.

Defense counsel confirmed he was ready for trial, and the court set the matter for a trial readiness hearing two days later in the trial department. Because he was appearing remotely, counsel asked the court to tell appellant to give him a phone call. Appellant agreed and asked for counsel's phone number, which counsel provided.

After the court heard other matters, it recalled appellant's case because appellant's mother had requested to address the court. Appellant's mother stated she was seeking to provide the court with a written motion on appellant's behalf, which was titled, "Defendant's *Marsden* Motion." The court ordered that the motion be lodged in the court file under seal to be considered by the trial judge at the next court date.[3]

The trial court conducted a *Marsden* hearing at the December 28, 2023, trial readiness hearing, and permitted the parties to address the issues raised in the written

---

[3] The prosecutor objected to lodging the motion, noting appellant was represented by counsel and the motion had been prepared by a third party. The court nevertheless permitted the motion to be lodged, explaining appellant had apparently requested his mother submit it and that doing so would ensure the trial judge was aware of the Marsden issue and could address it at the next hearing.

motion.[4]  During the hearing, appellant made clear that the positions set forth in the written motion submitted by his mother were his own.

Appellant first complained that defense counsel had expressed that appellant was likely to be convicted at trial.  Counsel responded that this assessment accurately reflected the strength of the evidence, noting appellant had given a full confession to law enforcement and that a jury was unlikely to credit his claim that he was "upset with the police" and merely "wasting their time and jerking them around."  Counsel further stated that, although appellant claimed to have an alibi defense, the only witness he had identified in support of that defense was his mother.  Thus, it was counsel's opinion that proceeding to trial was a "bad idea," and that appellant should attempt to work out a plea deal with the prosecution.

With respect to the prosecutor's reference to potential additional alibi witnesses, defense counsel explained that he had asked appellant to call him after the prior hearing to provide their names, but appellant failed to do so, and appellant's mother subsequently indicated that appellant did not wish to communicate with him.  Appellant stated that he had already provided counsel with the names of the alibi witnesses—two other family members and his probation officer.  The court inquired whether counsel would contact these potential witnesses, and counsel confirmed that he would do so, provided appellant or his mother supplied their contact information.  Addressing appellant's concern that the prosecution was seeking to exclude the witnesses based on counsel's failure to disclose their identities and statements, the court explained that counsel was not required to provide such information unless he intended to call them as witnesses, and he could not make that determination without first speaking with them, so there was nothing to disclose.

---

**4**     The written motion submitted by appellant's mother is not part of the record on appeal.  Our review of the contents of the written motion is limited to the discussion of the court and parties on the record.

Appellant next contended that defense counsel failed to file motions on his behalf, including motions prepared by a paralegal friend of his mother. When questioned by the court, appellant was unable to describe the motions or provide the name of the purported author. The court rejected appellant's explanation that he was unable to review the materials because he did not know how to set up jail visits, remarking: "It doesn't sound like you're even trying."

Lastly, appellant asserted that defense counsel had failed to meet with him in jail to provide updates regarding his case, claiming counsel had visited him only twice during the nine months he had been in custody on the instant matter. The court inquired when counsel had last visited appellant, and counsel responded that he did not know, explaining that he had checked with the jail the previous day but was unable to obtain records of his visits. Counsel noted, however, that he met with appellant in a private room after each court appearance and always asked whether there was anything appellant wished to discuss.

At the conclusion of the hearing, the court asked defense counsel whether he had sufficient time to prepare for trial. Counsel replied that he "absolutely" did, with the exception of contacting the alibi witnesses, whom he intended to have an investigator reach as soon as possible. The court thereafter denied the *Marsden* motion, concluding no grounds existed to relieve counsel.

### 2. Midtrial Marsden hearing.

After the first *Marsden* hearing, the trial court continued the trial date several weeks due to defense counsel's ongoing COVID symptoms. On January 23, 2024, after trial had commenced and during the victim's direct examination, appellant made a second *Marsden* motion.

At the ensuing hearing, when asked to describe the basis for the motion, appellant stated, "I don't feel that [defense counsel] can properly defend me in this case." He explained that counsel told him that he was unlikely to prevail at trial, and that whenever

6.

he brought up potential evidence, counsel dismissed it as unnecessary or responded by explaining how the prosecutor would counter it. He noted he had mentioned the absence of fingerprints inside of the victim's car, and that defense counsel responded that his prints were found on the outside. The trial court remarked it is counsel's job to offer appellant his honest opinion rather than tell him what he wants to hear.

Appellant next complained defense counsel had failed to contact his probation officer, who appellant claimed had authorized him to leave the county for several days, including the date of the offenses. Counsel explained he made a tactical decision not to do so to avoid revealing appellant's probationary status to the jury. The trial court further observed that, even if such permission had been granted, the probation officer could not establish whether appellant actually left the area on the date of the offenses. Counsel also noted that he contacted the other two alibi witnesses identified by appellant, and neither could account for his whereabouts on the relevant date.

At the conclusion of the hearing, the trial court informed appellant that it was "not hearing what the problem is." Appellant stated, "I just don't feel confident in [defense counsel]." The court responded: "[T]hat's just a conclusion you've come to. You haven't given me any reason for not being confident in him. The reasons you've given me don't constitute grounds for a *Marsden*." Accordingly, the court denied the second *Marsden* motion.

## B.     *Standard of review.*

" 'A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citation.] When the defendant seeks to remove appointed counsel 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of counsel's inadequacy.' " (*People v. Panah* (2005) 35 Cal.4th 395,

431; see *People v. Cole* (2004) 33 Cal.4th 1158, 1190.) A defendant "must give specific examples of counsel's inadequacies, and cannot rest upon mere failure to get along with or have confidence in counsel." (*People v. Bills* (1995) 38 Cal.App.4th 953, 961.)

The denial of a *Marsden* motion is reviewed for abuse of discretion. (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) A trial court's ruling will not be disturbed " 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

## C.   *An abuse of discretion did not occur***.**

Based on our review of the record, we conclude the trial court did not abuse its discretion in denying appellant's *Marsden* motions. During both *Marsden* hearings, the court afforded appellant a full opportunity to articulate his grievances and undertook a careful inquiry into defense counsel's performance. At the first hearing, the court addressed each contention raised in appellant's written motion and then invited him to identify any additional concerns. Similarly, at the second hearing, the court permitted appellant to fully describe the reasons for his asserted loss of confidence in counsel.

The information elicited during the trial court's inquiries amply supported its conclusion that defense counsel was providing competent representation. As the court accurately observed, appellant's principal complaint was counsel's purported failure to timely investigate certain potential alibi witnesses. Appellant now argues that this purported failure demonstrated that counsel "had done virtually no prior investigation to prepare for trial." However, counsel explained that appellant had not provided him with the identities of the witnesses, and the court was entitled to credit counsel's representation.[5] (See *People v. Smith* (1993) 6 Cal.4th 684, 697 [court entitled to make

---

[5]     Appellant's claim that the People's apparent awareness of his proposed alibi witnesses reflects a lack of diligence by defense counsel is unsupported. The record does

credibility determination and accept counsel's explanation]; *People v. Taylor*, *supra*, 48 Cal.4th at p. 600 [same].) In any event, after the issue was raised at the first *Marsden* hearing, counsel confirmed he would promptly have an investigator contact the proposed witnesses. At the second hearing, counsel reported that his investigation revealed the witnesses lacked personal knowledge of appellant's whereabouts on the date of the offenses and therefore could not provide meaningful alibi testimony.

Appellant also contends that defense counsel failed to adequately communicate with him and keep him informed about the case, citing counsel's two custodial visits over a nine-month period. This contention is unavailing, as the number of visits alone does not establish inadequate representation or warrant substitution of counsel. (*People v. Myles* (2012) 53 Cal.4th 1181, 1208; *People v. Hart* (1999) 20 Cal.4th 546, 604.) Moreover, counsel explained that he met with appellant and discussed the case after each court hearing, and the record confirms there were numerous such hearings before trial. Counsel's positive COVID test appears to have prevented such an in-person meeting with appellant following the discussion of potential alibi witnesses at the December 26, 2023, trial readiness hearing, and he directed appellant to contact him by telephone. Appellant did not do so.[6] Thus, there was ample basis for the trial court to conclude that counsel had made, and was continuing to make, reasonable efforts to communicate with appellant and to investigate a potential alibi defense.

We also conclude it was reasonable for the trial court to find there was no irreconcilable conflict between appellant and defense counsel. Appellant's bare assertion

---

not establish how the People became aware of these witnesses, and we decline to draw a speculative inference of deficient performance on that basis.

[6] Appellant asserts for the first time on appeal that he did not call defense counsel from jail because the call would not have been confidential, and suggests counsel was unaware of that limitation. This assertion is unsupported, and nothing in the record indicates that incoming calls from counsel to appellant at the facility where he was housed would not have been confidential.

that he lacked confidence in counsel was insufficient to establish an irreconcilable conflict. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, overruled on another ground by *People v. Hill* (1998) 17 Cal.4th 800; see *People v. Silva* (1988) 45 Cal.3d 604, 622 [defendant's belief counsel was not acting in his best interests was insufficient to warrant substitution].) If such claims " ' "were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, … which is certainly not the law." ' " (*People v. Memro* (1995) 11 Cal.4th 786, 857.) When asked to explain his loss of confidence in counsel, appellant described disagreements regarding the significance of certain evidence and witnesses, and expressed frustration with counsel's assessment that appellant was unlikely to prevail at trial and should consider a plea offer.[7] Such "tactical disagreements … do not by themselves constitute an 'irreconcilable conflict.' " (*People v. Cole, supra,* 33 Cal.4th at p. 1192; see *People v. Clark* (2011) 52 Cal.4th 856, 912.)

Appellant contends that even if the trial court determined defense counsel's representation was adequate, it nonetheless abused its discretion by failing to conduct further inquiry into whether appellant's complaints regarding counsel's performance had resulted in an irreconcilable conflict between attorney and client. We disagree. The record reflects that in both *Marsden* hearings the court permitted appellant "to explain the basis of his contention and to relate specific instances of counsel's inadequacy.' " (*People v. Panah, supra*, 35 Cal.4th at p. 431.) Appellant's only complaint that could arguably have been construed as an "irreconcilable conflict" was his assertion that he lacked confidence in counsel. That assertion, however, was based solely on his claims

---

[7]     Appellant's claim that defense counsel made no effort to negotiate a plea agreement is belied by the record. Prior to trial, appellant rejected the People's offer to resolve the case for a determinate term of 21 years in state prison. Shortly after trial commenced, defense counsel advised that appellant was willing to accept that offer. The prosecutor responded that the pretrial offer had been withdrawn but extended a new offer of 22 years eight months. Appellant rejected that offer as well.

that counsel was not providing adequate representation.  As we have explained, the court reasonably rejected those allegations after careful consideration and thorough questioning of counsel.  Having determined appellant's loss of confidence was not grounded in any actual deficiency in representation, the court had no reason to inquire further into the existence of an irreconcilable conflict.

In sum, the trial court denied the *Marsden* motions following thorough hearings at which appellant was afforded a full opportunity to articulate the bases for his claims. Having reviewed the record in its entirety, we conclude the court's rulings were reasonable.  Appellant has not shown his right to the assistance of counsel was substantially impaired or that an irreconcilable conflict existed.  (See *People v. Taylor, supra,* 48 Cal.4th at p. 599.)  Accordingly, no abuse of discretion appears, and the claim fails.

## DISPOSITION

The judgment is affirmed.


LEVY, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DESANTOS, J.

11.