Filed 3/30/22  P. v. Nava CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079040 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 17-CR05114) |
| JUAN GARCIA NAVA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Santa Clara County, Timothy R. Volkmann, Judge.  Reversed in part, affirmed in part and remanded for resentencing.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant, Rogelio Castillo.

Solomon Wallack, under appointment by the Court of Appeal, for Defendant and Appellant, Juan Garcia Nava.

Rob Bonta and Xavier Becerra, Attorneys General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Catherine A. Rivlin and Allen R. Crown, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged codefendants Juan Luis Nava Garcia and Rogelio Castillo with shooting at two houses of a rival gang in Watsonville, California. A jury convicted them of crimes and found true special allegations related to only a West 5th Street incident.

*Nava's Convictions and Sentence*

A jury convicted Nava of the attempted willful, deliberate and premeditated murder of D.C. (Pen. Code,[1] §§ 664, 187, subd. (a); count 1), shooting at an inhabited dwelling on West 5th Street (§ 246; count 2), assault with a firearm on D.C. (§ 245, subd. (a)(2); count 3), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4), active participation in a criminal street gang (§ 186.22, subd. (a); count 7), misdemeanor battery on a peace officer (§ 243, subd. (b); count 8), and misdemeanor resisting a peace officer (§ 148, subd. (a); count 9). It made true findings of premeditation as to count 1 (§ 664, subd. (a)), street gang allegations as to counts 1 through 4 (§ 186.22, subd. (b)(1)), firearm use and special allegations as to counts 1 through 3 (§§ 12022.5, subds. (a) and (d); 12022.53, subds. (b), (c), (d), (e), (e)(1)), and a great bodily injury allegation as to count 3 (§ 12022.7, subd. (a)). The jury found Nava not guilty of shooting at an uninhabited building on Ross Street (§ 246; count 5) and assault with a firearm on S.C. (§ 245, subd. (a)(2); count 6).

The court found true that Nava had suffered a prior serious felony conviction. (§ 667, subds. (a)(1), (b)-(i).) It sentenced him to 55 years to life in prison as follows: under section 186.22, subdivision (b)(5), 15 years to life on the attempted murder conviction, doubled to 30 years to life under the "Three Strikes" law, plus 25 years on the firearm use allegations (§ 12022.53 subds. (d) and (e)).

---

[1]    Undesignated statutory references are to the Penal Code.

*Castillo's Convictions and Sentence*

A jury convicted Castillo of attempted willful, deliberate and premeditated murder of D.C. (§§ 664, 187, subd. (a); count 1), shooting at an inhabited dwelling on West 5th Street (§ 246; count 2), assault with a firearm on D.C. (§ 245, subd. (a)(2); count 3), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4), resisting an executive officer (§ 69; count 5), evading an officer (Veh. Code, § 2800.2, subd. (a); count 8), active participation in a criminal street gang (§ 186.22, subd. (a); count 9), and misdemeanor resisting a peace officer (§ 148, subd. (a); count 10). It found true that as to count 1 the attempted murder was committed willfully, deliberately, and with premeditation (§ 664, subd. (a)); as to counts 1 and 2 special allegations that a principal discharged a firearm that caused great bodily injury (§ 12022.53, subds. (d), (e)(1)), a principal discharged a firearm (§ 12022.53, subds. (c), (e)(1)), and a principal used a firearm (§ 12022.53, subds. (b), (e)); and as to counts 1 through 5 and 8 that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)-(4)). It found Castillo not guilty on count 6 (§ 246; shooting at an uninhabited building on Ross Street) and count 7 (§ 245, subd. (a)(2); assault with a firearm on S.C.).

The court found true that Castillo had suffered a prior prison term (§ 667.5, subds. (b)-(f)). It sentenced him to 32 years to life in prison as follows: seven years to life for the attempted premeditated murder plus 25 years for the gun allegations under sections 12022.53, subdivisions (d) and (e)(1). It imposed but stayed the sentence on the other counts.

*Appellants' Contentions*

Appellants jointly contend the trial court: (1) violated their constitutional due process rights by failing to instruct the jury on self-defense

3

as to the attempted murder, assault with a firearm, and shooting at an inhabited dwelling charges; (2) violated their constitutional due process rights on the attempted murder count by failing to instruct on the lesser included offense of voluntary manslaughter due to imperfect self-defense; and (3) committed cumulative error. They contend in supplemental briefing that under Assembly Bill No. 333, which amended section 186.22, insufficient evidence supports their gang-related convictions and enhancements. They further contend that under Assembly Bill No. 518, which amended section 654, the trial court on remand should have an opportunity to exercise its newfound discretion to choose as the principal count any offense that occurred during the same course of conduct.

Nava separately contends the trial court: (1) erroneously admitted prejudicial evidence of a recording made in a patrol car in which he mentioned he should have shot police officers; and (2) violated his constitutional right to fair notice because as to count 1, it sentenced him on both the gang enhancement (§ 186.22, subd. (b)(1)) and gang-related firearm enhancement (§ 12022.53, subd. (d)), although the People did not specifically charge him with the firearm enhancement as to this count.

Castillo separately contends the trial court: (1) abused its discretion by denying his motions to replace his trial counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); and (2) erroneously imposed a seven-year-to-life term on the attempted premeditated murder conviction.

The People concede and we agree appellants' gang-related convictions and enhancements should be reversed and the matter remanded for resentencing. They further concede, and we again agree, that Nava's 25-year sentence on count 1 and Castillo's seven-year sentence on count 1 were improperly imposed. We reverse the gang-related convictions and vacate the

4

enhancements, otherwise affirm the judgment, and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

*The Ross Street Incident*

On August 11, 2017, appellants, who were Sureño gang members, drove a pickup truck in front of a rival Norteño gang house on Ross Avenue, where some men were in the driveway. Someone from the pickup truck fired several gunshots in the direction of the men outside, grazing S.C. and striking a car in the driveway. As appellants sped away, one of the men outside the house returned fire.

*The West 5th Street Incident*

Approximately 30 minutes later, Nava shot at another well-known Norteño gang house on West 5th Street. D.C. testified he was outside the house with a group of five or six men that afternoon when a man stepped outside the residence and said, "What's up." Nava, who was the passenger in the truck, fired several bullets at some men standing on the porch. Castillo drove away rapidly. A bullet struck D.C.'s right leg, leaving him with permanent nerve damage and loss of feeling in his leg. Other bullets struck the homeowner's vehicle.

G.P. was also outside the residence that afternoon and testified that when he saw the pickup truck arrive, he initially thought some friends were dropping by. One person outside the residence waved his hand in the truck's direction. Seconds later, G.P. saw Nava fire two or three shots at the crowd outside the residence and the truck immediately took off. The men outside the house did not exchange words with Nava and Castillo. After the shooting, G.P. cleaned up some beer cans and chip wrappers from the scene and deposited them in a bin inside the house.

5

U.P., who resided at the West 5th Street house, testified that during the incident he heard "three, four or five [gunshots], more or less." He saw a small car, not a truck, leaving the scene. When police arrived, they searched the outside of his house but not inside.

A police officer spotted a pickup truck leaving the direction of West 5th Street. Castillo and Nava saw the officer's patrol car and drove toward a freeway. Two patrol officers pursued them. As the truck exited the freeway, Nava tossed four unexpended bullets out the window, and an officer later retrieved them. Appellants exited the freeway and committed numerous traffic infractions, endangering people on city streets. They stopped in a parking lot near a "known hangout" or gathering spot for Sureño gang members. Appellants ran in opposite directions.

An officer with a rifle yelled at Castillo to stop and lie down on the ground, and he complied. Other officers handcuffed Castillo. Nava ran into an open field. Watsonville Police Officer Rocha took Nava down to the ground, and another officer handcuffed Nava. Nava told Officer Rocha, "[Y]ou're a little bitch."

Police placed Castillo in the back of a patrol vehicle. Officer Rocha testified that he turned on his body worn recorder when Castillo directly threatened him and his family for several minutes: "[Castillo] asked me— first, . . . why I no longer vacation in Mexico with my family. And then he volunteered to answer that, by saying that I knew what the consequences would be if I was to vacation in Mexico, our hometown."

In the booking room, Nava twice spat on Officer Rocha. After police placed Nava on the floor and put a spit mask on him, Nava told an officer, "Just watch, what's gonna happen to you is all business [*sic*]." Nava described that officer's personal vehicle and his home.

6

Appellants had a conversation in a police vehicle outfitted with a recording device, and Castillo said he forgot his cell phone in the pickup and would call and ask a relative to delete one of Castillo's social media accounts. Castillo mentioned his threats to Officer Rocha. Nava bragged to Castillo that he spat on Officer Rocha and that he and Castillo would be on the front page of a local newspaper. Nava also said he should have shot at the pursuing officers.

## DISCUSSION

### I. *Instructional Error Claims*

#### A. *CALCRIM Nos. 875 and 3470*

Appellants contend the court violated their constitutional rights to due process by failing to instruct the jury on self-defense to the charges of attempted murder, shooting at an inhabited dwelling, assault with a firearm, and active participation in a street gang. They specifically rely on testimony that the West 5th Street house was a known gathering place for gang members, and one of the men outside made a hand motion and asked the truck's passengers "What's up," which, they argue, could have been interpreted as a gang threat. Appellants point out G.P. cleaned the scene following the shooting. They highlight discrepancies in the testimony of witnesses who heard as many as five gunshots and those who said Nava only fired two or three shots. They infer there was a second shooter. They point to the fact that one witness said the shooters left the scene in a small car and not a truck, while other witnesses said they left in a truck. Appellants also point out they had relied on self-defense and were acquitted on the Ross Avenue counts.

7

1. *Background*

Both Nava's and Castillo's defense counsel requested the court instruct the jury on self-defense or defense of another with a portion of CALCRIM No 875—Assault With Deadly Weapon or Force Likely to Produce Great Bodily Injury, which provides that to prove the assault offense, the People must prove that "[t]he defendant did not act (in self-defense/ [or] in defense of someone else)]." The court declined on grounds insufficient evidence supported that instruction. For the same reason, the court also declined to instruct the jury with CALCRIM No. 3470—Right to Self-Defense or Defense of Another (Non-Homicide).

However, as to the Ross Avenue incident, both defense counsel argued self-defense instructions were supported by the evidence showing there was return fire. The court agreed to instruct the jury on self-defense as to that incident only (counts 6 and 7 against Castillo), and (counts 5 and 6 against Nava).

2. *Applicable Law*

"A trial court must instruct the jury on general principles of law necessary for the jury's understanding of the case." (*People v. Ramirez* (2019) 40 Cal.App.5th 305, 307.) The court has a sua sponte duty to instruct on defenses relied upon by the defendant. (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.' " (*People v. Salas* (2006) 37 Cal.4th 967, 982.) The trial court does not have a duty to give instructions based solely on conjecture and speculation. (*People v. Young* (2005) 34 Cal.4th 1149, 1200.)

8

To justify an act of self-defense, the defendant must have an honest and reasonable belief that bodily injury is imminent. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064; see also *In re Christian S.* (1994) 7 Cal.4th 768, 783 [perfect and imperfect self-defense require "an *actual* fear of an *imminent* harm"].) The right of self-defense is limited to the use of force that itself is reasonable under the circumstances. (*Ibid.*) For the imminent danger element, " '[f]ear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of *imminent* danger to life or great bodily injury.' " (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) " 'Errors in jury instructions are questions of law, which we review de novo.' " (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642.)

3. *Analysis*

We conclude the court did not err in refusing to instruct the jury on self-defense as to the West 5th Street charges because substantial evidence did not support such instruction. The evidence showed only that Nava fired at the 5th West Street house, and not that anyone there returned fire at appellants or that appellants were defending themselves against an attack. On this record, there is no basis to conclude appellants reasonably believed they were in imminent danger of bodily injury; rather, they drove from one rival gang house to another, fired at men they believed were rival gang members, and then drove away quickly. Nava concedes that "he and Castillo may have been courting trouble by going to the West 5th Street house in the first place." There was no evidence that appellants were in imminent danger of an attack to support a self-defense instruction.

Appellants argue the evidence that one of the men at the West 5th Street residence said, "What's up," and that different witnesses reported

9

different numbers of shots fired, was sufficient to instill in them a belief that they needed to immediately defend themselves. Assuming one of the men outside the residence in fact used the words "what's up"—and the testimony is in dispute on this point—in this context, those words did not necessarily imply a gang threat. Nothing in the record shows that that the person who uttered those words knew that appellants were from a rival gang, or meant the words as a threat. Further, no evidence showed that appellants even heard the statement. The jury also could have interpreted those words, consistent with G.P.'s testimony, as a reflexive greeting to an assumed friend. Castillo separately argues that "there was evidence that more than one gun was fired during the incident . . . ." But there was no such evidence, only a discrepancy between witnesses as to how many shots were fired—not that shots were fired from more than one gun. The other evidence appellants relied on—that G.P. cleaned up the scene and U.P. saw a small car fleeing the scene—are unavailing as the evidence relates to those witnesses' impressions and actions after the shooting and therefore have no bearing on the issue of *appellants'* apprehension of the situation and whether they fired the shots in self-defense.

Appellants argue the court's alleged error of refusing the self-defense instructions prejudiced them. Nava specifically argues the prosecutor took full advantage of the instructional error during closing argument and pointed out that the self-defense instruction given applied only to the Ross Avenue incident. But whereas an argument could be made for self-defense instructions as to the Ross Avenue incident, no evidence supported such instruction as to the West 5th Street residence. Having found that the trial court did not err, we need not, and do not, address whether the alleged error was prejudicial under *Chapman v. California* (1967) 386 U.S. 18, 24.

10

B.  *CALCRIM No. 604 on Attempted Voluntary Manslaughter*

Relying on the same evidence set forth above, appellants contend the court violated their constitutional rights to due process by failing to instruct the jury that a lesser included offense of count 1 was attempted voluntary manslaughter due to imperfect self-defense.  Nava argues the court's error lowered the prosecution's burden of proving the count 1 charge.

1.  *Background*

In proceedings outside the jury's presence, Nava's and Castillo's attorneys requested the court instruct the jury with CALCRIM No. 604— Attempted Voluntary Manslaughter:  Imperfect Self-Defense—Lesser Included Offense.  Nava's counsel argued appellants were driving past known Norteño gang meeting spots, and because appellants would be perceived as Sureño gang members, they shot at the Norteños out of fear of being attacked.  The court asked, "What's the evidence in the case that allows the Court to find that there is sufficient or substantial evidence as to an imminent danger?"  Nava's counsel replied, "I believe it could be argued that, due to the gang circumstances, due to the nature of that house, that [appellants] maybe actually but mistakenly believed that they were in imminent danger."  Castillo's counsel agreed.

The court rejected appellants' request:  "I don't think the evidence is substantial enough to merit consideration by the jury.  . . . [T]here is just an absence of evidence to support that either defendant believe[d] that they or someone else was in imminent danger of being killed or suffering great bodily injury, or that they believed that the immediate use of deadly force was necessary to defend against that danger."

11

2. *Analysis*

Based on our de novo review (*People v. Simon* (2016) 1 Cal.5th 98, 133), this claim fails for the same reason as set forth above regarding the related instructional error claim; namely, no substantial evidence supported it. A court has no obligation to instruct the jury on a lesser included offense when no evidence shows that the offense was less than that charged. (*People v. Barrick* (1982) 33 Cal.3d 115, 135.) The appellate court independently determines whether substantial evidence existed to support an instruction. (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.) A defendant acts in imperfect self-defense when the defendant actually believes (1) that he or she is in imminent peril of being killed or suffering great bodily injury, and (2) that the immediate use of deadly force is necessary to defend against the danger, but (3) at least one of those beliefs is unreasonable. (*People v. Her* (2009) 181 Cal.App.4th 349, 352.) "[A] quarrel provoked by a defendant, or a danger which he has voluntarily brought upon himself by his own misconduct, is not sufficient to support a reasonable apprehension of imminent danger." (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1102.)

II. *Gang-Related Convictions and Enhancements*

Appellants contend that under Assembly Bill No. 333, which modified the section 186.22 gang statute, no substantial evidence proved the predicate crimes to sustain the convictions and enhancements on the gang-related charges. They further contend that under Assembly Bill No. 518, which amended section 654, the trial court on remand should have an opportunity to exercise its newfound discretion and choose as the principal count any offense that occurred during the same course of conduct.

We agree with the People's concession that Assembly Bill No. 333 is retroactive and applies here: "The prosecution in this case did not,

12

understandably, prove the predicate offenses in accordance with the new requirements, which did not exist at the time of the trial. For example, . . . only one predicate offense proved at trial occurred less than three years before the current offenses on August 11, 2017. That offense was appellant Castillo's conviction of section 29800, possession of a firearm by a felon . . . that occurred on August 15th, 2015. As appellants point out, simple possession of a firearm is not a qualifying predicate gang offense under the amended statute."

A. *Background*

Officer Rocha testified regarding the circumstances of Castillo's August 2015 conviction of possession of a firearm by a felon (§ 29800) that during his traffic stop of Castillo's surveilled vehicle, he found a loaded revolver. Castillo admitted to being a gang member, and Officer Rocha arrested him. No other testimony showed that Castillo's gang profited financially from the gun possession or was involved in that possession. And no evidence showed the gun was intended for use against rivals or for retaliation. In fact, the People did not charge Castillo with gang-related allegations as to this offense.

B. *Applicable Law*

"[A]bsent evidence to the contrary, [we presume] the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date. [Citations.] This principle also applies when an enhancement has been amended to redefine to an appellant's benefit the conduct subject to the enhancement." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344; accord, *People v. E.H.* (2022) 75 Cal.App.5th 467, 473 as mod. Mar.1, 2022, as mod. on den. of rehg. Mar. 18, 2022.) Assembly Bill No. 333 "increases the threshold for conviction of the section 186.22 offense and the

13

imposition of the enhancement." (*Lopez,* at p. 344.)  It is an ameliorative amendment that applies to all nonfinal cases on appeal, as it is silent regarding retroactivity.  (*Ibid*.; *In re Estrada* (1965) 63 Cal.2d 740, 744-746.)

C.  *Analysis*

Although Assembly Bill No. 333 transforms section 186.22 in several respects, we focus on one change in particular.  To prove the existence of a criminal street gang, section 186.22, subdivision (f), requires proof of " 'a pattern of criminal gang activity.' "  "The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses." (*People v. Valencia* (2021) 11 Cal.5th 818, 829.)  Before Assembly Bill No. 333, it was not necessary for the People to prove predicate offenses were gang related. (*People v. Gardeley* (1996) 14 Cal.4th 605, 609-610.)  Now, the law requires "the [predicate] offenses [to] commonly benefit[ ] a criminal street gang, and the common benefit of the offense [be] more than reputational," effectively overruling *Gardeley*.  (§ 186.22, subd. (e)(1); *People v. E.H., supra,* 75 Cal.App.5th at p. 473.)

Here, no evidence showed the predicate offenses proved at trial commonly benefitted a gang.  (See § 186.22, subd. (g) [defining what constitutes a more than reputational common benefit].)  Accordingly, the evidence adduced at trial to prove a criminal street gang itself is no longer valid.  Accordingly, we reverse appellants' gang crime convictions.

Section 12022.53 provides for sentence enhancements for the use of firearms in the commission of an enumerated felony.  The statute first provides for escalating punishments depending on how the firearm is used. The least severe penalty is set forth in section 12022.53, subdivision (b), which provides for a consecutive 10-year term for a defendant who "personally uses" a firearm in a felony.  Next, a consecutive 20-year term is

14

imposed under section 12022.53, subdivision (c), if the defendant "personally and intentionally discharges a firearm" in the commission of the offense. Finally, section 12022.53, subdivision (d) provides for a consecutive sentence enhancement of 25 years to life when the defendant "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death" during the commission of the offense. (*People v. Lopez, supra,* 73 Cal.App.5th at p. 374.)

While these section 12022.53 subdivisions provide punishment for offenders who personally use a firearm during the commission of their crimes, the penalties may also be imposed on any person who is a principal in the offense under certain gang-related circumstances:  First, the person who is a principal must be "convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" as set forth in section 186.22, subdivision (b).  (§ 12022.53, subd. (e)(1)(A).)  Second, "[a]ny principal in the offense" must have "committed any act specified in subdivision (b), (c), or (d)," that is, any principal involved in the offense must have personally used a firearm in the escalating use categories provided in section 12022.53, subdivisions (b) through (d). (§ 12022.53, subd. (e)(1)(B).)  (*People v. Lopez, supra,* 73 Cal.App.5th at p. 374.)

Here, as set forth above, the jury found true as to both Nava and Castillo on different counts that a principal in the offense was convicted of a felony committed for the benefit of a criminal street gang under section 186.22, subdivision (b), and personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (e)(1).  Because these enhancements depend on a finding that the principal was "convicted of a

15

felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" as set forth in section 186.22, subdivision (b) (§ 12022.53, subd. (e)(1)(A)), the changes to section 186.22 made by Assembly Bill No. 333 require that these enhancements be vacated. We therefore remand the matter to give the People the opportunity to prove the applicability of the enhancements under the amendments to section 186.22. (*People v. Lopez, supra,* 73 Cal.App.5th at p. 346.)

III. *Evidence That Nava Threatened to Shoot Police Officers*

Nava contends this court should reverse the attempted murder conviction because the court violated his constitutional due process rights by admitting into evidence the recordings in which he spoke about shooting police officers. He specifically contends that the court abused its discretion under Evidence Code section 352, as Officer Rocha's translation of his conversation was "irrelevant, prejudicial, and potentially misleading testimony [and] likely impacted the jury's assessment of the 'intent to kill' element of the attempted murder count."

A. *Background*

Before trial, Nava moved to exclude from evidence his recorded statements "that he should have fired a gun at officers during the vehicle pursuit." The prosecutor stated her intent to introduce into evidence both a two-minute and a six-minute audio recording of Nava's statements and have Officer Rocha testify about his translation of them. The court tentatively ruled the evidence was admissible subject to cross-examination.

Officer Rocha testified that, while appellants were in a police vehicle, Nava said in Spanish that what he should have done to law enforcement during their chase of appellants was to "tirarle para atras." The prosecutor

16

asked, "What does that term mean?" Over Nava's objections that the question called for speculation and there was a lack of foundation, Officer Rocha testified that the literal translation was "to throw back," but colloquially it meant "to shoot back." Officer Rocha testified Nava also stated that he should have "aventado un poder," which literally meant "to throw a power," but colloquially meant "to shoot."

The court later put on the record its evidentiary ruling: "[Officer Rocha] did indicate that he grew up in Mexico, that his primary original language was Spanish. He was directly engaged in the translation of these audios. . . . [F]rom the Court's perspective, his description as to various meanings of phrases or terms was probative. . . . I do not believe it was confusing to the jury. It was not particularly time consuming. The jury will receive instructions as to witnesses and regarding the issues of lay and expert opinion. So, from the Court's perspective, it was indeed admissible."

B. *Applicable Law*

"[Evidence Code] section 352 permits [the trial court] to exclude evidence if in the court's discretion 'its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' Like all proffered evidence, character evidence is subject to exclusion under that section." (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 448.) " ' "Prejudice" as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. . . . " 'In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 438-439.)

We review the trial court's rulings on admission of evidence under Evidence Code section 352 for abuse of discretion.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.)  The discretion is as broad as necessary to deal with the great variety of factual situations in which the issue arises, and in most instances the appellate courts will uphold the trial court's exercise of its discretion.  (*People v. Clark* (2011) 52 Cal.4th 856, 932.)  The erroneous exercise of discretion under the ordinary rules of evidence does not implicate the federal Constitution.  The standard of prejudice is that for state law error, as set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).  (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.)

C. *Analysis*

We conclude Nava's challenged statements were relevant to prove the charges that appellants intended to resist the officers.  They were also relevant for the gang crime and enhancements, as they showed the defendants bragging about shooting at the police.  Nava's comments could have shown appellants sought to enhance their individual reputations and that of their gang, and were consistent with their other comments that they would receive media coverage for their underlying crimes.  Officer Rocha stated his background for being able to translate appellants' Spanish language statements into English, based on his family and Nava's family having shared cultural heritage in Mexico.  He also provided the jury with the standard and colloquial Spanish translations of Nava's statements; therefore, the jury could elect to rely on the interpretation that made more sense in this context.  The court properly admitted Officer Rocha's translations, which had a proper purpose; therefore, there was no abuse of discretion.

Under Evidence Code section 352, the challenged statements did not require extensive testimony or confuse the jury as to the crimes charged, and they were not unduly prejudicial in light of other evidence showing appellants' aggression and threats toward the police officers in general and Officer Rocha in particular. Even if Nava's statements had been excluded, it is not reasonably probable that Nava would have received a more favorable result (*Watson, supra*, 46 Cal.2d at p. 836), as the uncontradicted evidence supporting his conviction was that during the West 5th Street incident, Nava shot a man in front of the residence. We point out the court instructed the jury with CALCRIM No. 333 on lay witness opinion testimony: "Witnesses gave their opinions during the trial. You may but are not required to accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. . . . [¶] . . . You may disregard all or any part of an opinion that you find unbelievable, unreasonable or unsupported by the evidence." "Jurors are . . . presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

IV. *Nava's Sentencing Error Claim*

Relying on the California Supreme Court's decision in *People v. Anderson* (2020) 9 Cal.5th 946, 956-957, the People concede and we agree that Nava's 25-year sentence on count 1 was improperly imposed: "The personal firearm use allegation was alleged in count 3 and found true by the jury as to count 3, but a personal firearm use enhancement was applied at sentencing to the attempted murder charge in count 1. . . . [Nava] had notice in count 3 that he was charged as the shooter, but did not have notice that a sentence enhancement for being the shooter could be imposed as to count 1 in addition to the gang enhancement pursuant to section 186.22." As the court stated in *Anderson*: "The pleading must provide the defendant with fair

19

notice of the potential sentence. A pleading that alleges an enhancement as to one count does not provide fair notice that the same enhancement might be imposed as to a different count. When a pleading alleges an enhancement in connection with one count but not another, the defendant is ordinarily entitled to assume the prosecution made a discretionary choice not to pursue the enhancement on the second count, and to rely on that choice in making decisions such as whether to plead guilty or proceed to trial. [Citation.] Fair notice requires that every sentence enhancement be pleaded in connection with every count as to which it is imposed." (*Anderson*, at p. 957.) Accordingly, because Nava lacked notice, we vacate Nava's 25-year sentence on count 1.

V. <i>Castillo's</i> Marsden <i>Motions</i>

Castillo contends the court abused its discretion by denying his *Marsden* motions.

*Castillo's First* Marsden *Motion*

At a June 2018 pretrial hearing, Castillo filed a *Marsden* motion requesting the court replace his appointed attorney, who he claimed had not given him certain discovery, was not helping him, and had not filed a motion to suppress evidence based on a purported search warrant deficiency. Castillo told the court that his attorney, who was not visiting him often enough, had failed to timely obtain a gang expert. Castillo said he could not work with his attorney.

Castillo's attorney responded that he gave Castillo some discovery before the preliminary hearing, but acknowledged not giving Castillo other discovery because he was still examining it. He also admitted not visiting Castillo as frequently as the attorney would have liked. Castillo's attorney explained he had investigated filing a suppression motion but concluded it

would lack merit. He stated he had yet to find a suitable gang expert replacement. Castillo's attorney affirmed he could continue representing Castillo and was willing to work with him.

The court found that Castillo had not established good cause to replace his attorney, adding defense counsel was not permitted to file unmeritorious motions.

*Castillo's Second* Marsden *Motion*

In an August 2017 *Marsden* hearing, Castillo again stated his attorney had failed to give him discovery, confer with him, or file a suppression motion. Castillo said he did not trust his attorney, who was acting as a surrogate prosecutor and against Castillo's interests.

Castillo's counsel replied that he had provided Castillo additional discovery, including a search warrant. He said he had determined no grounds existed to file a suppression motion under section 1538.5. Further, counsel had joined in Nava's section 995 motion to set aside the indictment or information, which the court had denied.

In denying the *Marsden* motion, the court found Castillo's relationship with his attorney was not so broken down that counsel could not properly continue representing Castillo at trial, which was two months away.

*Castillo's Third* Marsden *Motion*

In Castillo's third *Marsden* motion filed after the jury returned verdicts but before sentencing, he claimed he had not received certain discovery, his attorney was not doing his job, and his attorney had failed to inform him of a changed court date.

Castillo's attorney acknowledged: "I have provided Mr. Castillo with many of the packets of discovery, not all of them, it's true, and I do apologize to Mr. Castillo. There's been—I've had some medical issues during

21

the time where dates have been changed and I haven't seen you to tell you the dates have changed." Counsel asserted he was ready to review the probation report and prepare for the sentencing hearing. The court denied the motion, concluding Castillo and his attorney's relationship had not broken down.

## A. *Applicable Law*

A trial court conducting a *Marsden* motion at any stage of criminal proceedings—preconviction or postconviction—"must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604; *People v. Sanchez* (2011) 53 Cal.4th 80, 88; accord, *People v. Wright* (2021) 12 Cal.5th 419, 440; *People v. Johnson* (2018) 6 Cal.5th 541, 572). " '[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to [the] holding in *Marsden,* to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney.' " (*In re M.P.* (2013) 217 Cal.App.4th 441, 456; see *Sanchez,* at p. 88.)

We review the court's orders for abuse of discretion, which cannot be found unless denial of the requested substitution would substantially impair the defendant's right to effective assistance of counsel. (*In re M.P., supra,* 217 Cal.App.4th at p. 459.) Appellant bears the heavy burden of showing a clear abuse of that discretion. (*People v. Smith* (1993) 6 Cal.4th 684, 696; *People v. Bills* (1995) 38 Cal.App.4th 953, 961.) Abuse of discretion is not shown when the motion is based on appellant's "mere failure to get along with or have confidence in counsel." (*Bills,* at p. 961.)

B. *Analysis*

In evaluating Castillo's *Marsden* motions, the court did not find that the attorney's performance was inadequate; rather, it concluded that Castillo and his attorney were able to prepare for trial, and later for sentencing. We conclude it sufficed that the court elicited information from which it could conclude Castillo's complaints about counsel were " 'tactical disagreements, which do not by themselves constitute an "irreconcilable conflict." ' " (*People v. Wright, supra*, 12 Cal.5th at p. 441; *People v. Frederickson* (2020) 8 Cal.5th 963, 1001.) Because the court reasonably could conclude Castillo and his counsel principally disagreed over trial tactics, specifically whether to file a suppression motion, it did not abuse its discretion in denying Castillo's pretrial motions. Castillo's third *Marsden* motion was heard after the trial, which produced a partially favorable result for him. The court could have reasonably concluded that defense counsel was prepared to complete his work of reviewing the probation report and represent Castillo's interests adequately at the sentencing hearing. In all instances, the "trial court provided defendant 'full opportunity to air all of his complaints, and counsel to respond to them.' [Citation.] No more was necessary." (*Wright*, at p. 441.)

## VI. *Castillo's Sentencing Error*

The People concede and we agree the court imposed on Castillo an unauthorized sentence of seven years to life for attempted murder.

Section 664, subdivision (a), provides that "if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." (§ 664, subd. (a).) "A term of life with the possibility of parole does not have a minimum determinate term of seven years; rather, a person sentenced to such a term first becomes eligible

for parole in seven years. (§ 3046, subd. (a)(1).)" (*People v. Robinson* (2014) 232 Cal.App.4th 69, 73 fn. 3.) While there is a minimum parole eligibility period of seven years, the actual statutory sentence for attempted premeditated murder is life with the possibility of parole. (§ 664, subd. (a); see *People v. Wong* (2018) 27 Cal.App.5th 972, 977, fn. 4 ["[T]here is a minimum parole eligibility of seven years, but that is not part of the sentence that is pronounced."].) We remand for the court to modify Castillo's attempted murder sentence to one of life with the possibility of parole. (*People v. Robinson, supra*, 232 Cal.App.4th at p. 79; see *People v. Smith* (2001) 24 Cal.4th 849, 854.)

## VII. *Cumulative Error*

Appellants contend that cumulative prejudice from the court's errors requires reversal of their convictions. We disagree.

"The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.) We review appellants' claims of cumulative error to determine whether it is "reasonably probable a result more favorable to [them] would have been reached in the absence of the alleged errors." (*People v. Carrera* (1989) 49 Cal.3d 291, 332 [citing the *Watson* standard]; see *People v. Millwee* (1998) 18 Cal.4th 96, 168 [Supreme Court rejects defendant's cumulative prejudice argument, stating: "Our careful review of the record persuades us that the trial was fundamentally fair and its determination reliable."].) We reject appellants' claim because apart from the errors we have identified and resolved, overwhelming evidence supported the verdicts. It is not reasonably probable that the outcome would have been more favorable absent the other alleged errors.

## DISPOSITION

As to Juan Luis Nava Garcia, the section 186.22, subdivision (a) gang conviction in count 7 is reversed.  The section 186.22, subdivision (b)(1) and 12022.53, subdivision (e)(1) enhancements are vacated as to all counts.  The 25-year sentence on count 1 is vacated.  The remaining convictions are affirmed.

As to Rogelio Castillo, the section 186.22, subdivision (a) gang conviction in count 9 is reversed.  The section 186.22, subdivision (b)(1) and 12022.53, subdivision (e)(1) enhancements are vacated as to all counts.  The seven-year sentence on the attempted murder conviction is vacated and on that count he is sentenced to life with the possibility of parole.  The remaining convictions are affirmed.

On remand, the People may elect to retry the substantive gang crimes and the gang allegations.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.